# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF TENNESSEE

# NASHVILLE DIVISION

ANN MCKENZIE,

Plaintiff,

v.

VANDERBILT UNIVERSITY MEDICAL CENTER,

Defendant.

Case No. 3:26-cv-0274

JURY DEMAND

# COMPLAINT

Plaintiff Ann McKenzie, proceeding pro se, states as follows:

# I. JURISDICTION AND VENUE

1. This action arises under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.
2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.
3. Venue is proper in this district because the events giving rise to this action occurred in Nashville, Tennessee.

# II. PARTIES

4. Plaintiff Ann McKenzie is a resident of Clarksville, Tennessee.
5. Defendant Vanderbilt University Medical Center is an employer within the meaning of the ADA and operates in Nashville, Tennessee.

# III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).
7. The EEOC issued a Notice of Right to Sue dated December 12, 2025.
8. Plaintiff received the Notice approximately one week later and files this action within ninety (90) days of receipt.
9. A copy of the Notice of Right to Sue is attached as Exhibit A.

# IV. FACTUAL ALLEGATIONS

10. Plaintiff was employed by Defendant as a Registered Nurse.
11. On November 11, 2022, Plaintiff sustained a work-related shoulder and cervical spine injury.
12. Plaintiff underwent shoulder surgery in June 2023 and a second surgery in February 2024.
13. Plaintiff remained under physician-imposed medical restrictions, including limitations on use of her left arm above shoulder level.
14. Defendant was aware of Plaintiff's medical restrictions.

### Employment Status After Injury

15. Following her injury, Plaintiff was removed from the work schedule and placed in an inactive employment status.
16. Plaintiff was informed she could not receive both FMLA benefits and workers' compensation benefits.
17. Plaintiff was advised she would be reactivated upon medical clearance.
18. Plaintiff remained employed by Defendant from November 2022 through September 2024.

### Requests for Accommodation

19. Plaintiff sought to return to work within her documented medical restrictions.
20. Plaintiff requested reasonable accommodation.
21. Defendant did not engage in a meaningful interactive process to determine whether Plaintiff could perform essential job functions with reasonable accommodation.
22. Defendant did not provide reassignment or other accommodation.

### Termination

23. In or about August 2024, Defendant initiated termination proceedings.
24. In September 2024, Defendant terminated Plaintiff's employment.
25. Defendant stated that Plaintiff violated its non-FMLA leave policy and exceeded a six-month maximum leave period.
26. At the time of termination, Plaintiff remained under documented medical restrictions and had not been medically released to full duty.
27. Defendant applied its leave policy without conducting an individualized assessment of whether additional leave or reassignment constituted a reasonable accommodation under the ADA.
28. As a result of Defendant's actions, Plaintiff suffered loss of wages, benefits, and emotional distress.

# V. CLAIMS FOR RELIEF

### COUNT I – FAILURE TO ACCOMMODATE (ADA)

29. Plaintiff incorporates paragraphs 1–28.

30. Plaintiff had a disability within the meaning of the ADA.
31. Plaintiff was qualified to perform the essential functions of her position with reasonable accommodation.
32. Defendant failed to engage in the interactive process in good faith.
33. Defendant failed to provide reasonable accommodation.
34. Defendant violated the ADA.

## COUNT II – DISABILITY DISCRIMINATION (ADA)

35. Plaintiff incorporates paragraphs 1–28.
36. Defendant terminated Plaintiff while she remained under medical restrictions.
37. Plaintiff's disability was a motivating factor in Defendant's decision.
38. Defendant violated the ADA.

## COUNT III – RETALIATION (ADA)

39. Plaintiff incorporates paragraphs 1–28.
40. Plaintiff engaged in protected activity by requesting accommodation.
41. Defendant terminated Plaintiff thereafter.
42. There is a causal connection between Plaintiff's protected activity and termination.
43. Defendant violated the ADA.

# VI. DAMAGES

Plaintiff seeks:

- Back pay
- Front pay
- Compensatory damages
- Punitive damages
- Pre-judgment interest
- Costs
- Trial by jury

# VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Ann McKenzie

149 Kingstons Cove

Clarksville, TN 37042

931-220-4516

abevels@gmail.com

Plaintiff, Pro Se

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF TENNESSEE

# NASHVILLE DIVISION

ANN MCKENZIE,

Plaintiff,

v.

VANDERBILT UNIVERSITY MEDICAL CENTER,

Defendant.

Case No. _____

JURY DEMAND

# COMPLAINT

Plaintiff Ann McKenzie, proceeding pro se, states as follows:

# I. JURISDICTION AND VENUE

1. This action arises under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.
2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.
3. Venue is proper in this district because the events giving rise to this action occurred in Nashville, Tennessee.

# II. PARTIES

4. Plaintiff Ann McKenzie is a resident of Clarksville, Tennessee.
5. Defendant Vanderbilt University Medical Center is an employer within the meaning of the ADA and operates in Nashville, Tennessee.

# III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).
7. The EEOC issued a Notice of Right to Sue dated December 12, 2025.
8. Plaintiff received the Notice approximately one week later and files this action within ninety (90) days of receipt.
9. A copy of the Notice of Right to Sue is attached as Exhibit A.

# IV. FACTUAL ALLEGATIONS

10. Plaintiff was employed by Defendant as a Registered Nurse.
11. On November 11, 2022, Plaintiff sustained a work-related shoulder and cervical spine injury.
12. Plaintiff underwent shoulder surgery in June 2023 and a second surgery in February 2024.
13. Plaintiff remained under physician-imposed medical restrictions, including limitations on use of her left arm above shoulder level.
14. Defendant was aware of Plaintiff's medical restrictions.

### Employment Status After Injury

15. Following her injury, Plaintiff was removed from the work schedule and placed in an inactive employment status.
16. Plaintiff was informed she could not receive both FMLA benefits and workers' compensation benefits.
17. Plaintiff was advised she would be reactivated upon medical clearance.
18. Plaintiff remained employed by Defendant from November 2022 through September 2024.

### Requests for Accommodation

19. Plaintiff sought to return to work within her documented medical restrictions.
20. Plaintiff requested reasonable accommodation.
21. Defendant did not engage in a meaningful interactive process to determine whether Plaintiff could perform essential job functions with reasonable accommodation.
22. Defendant did not provide reassignment or other accommodation.

### Termination

23. In or about August 2024, Defendant initiated termination proceedings.
24. In September 2024, Defendant terminated Plaintiff's employment.
25. Defendant stated that Plaintiff violated its non-FMLA leave policy and exceeded a six-month maximum leave period.
26. At the time of termination, Plaintiff remained under documented medical restrictions and had not been medically released to full duty.
27. Defendant applied its leave policy without conducting an individualized assessment of whether additional leave or reassignment constituted a reasonable accommodation under the ADA.
28. As a result of Defendant's actions, Plaintiff suffered loss of wages, benefits, and emotional distress.

# V. CLAIMS FOR RELIEF

## COUNT I – FAILURE TO ACCOMMODATE (ADA)

29. Plaintiff incorporates paragraphs 1–28.

30. Plaintiff had a disability within the meaning of the ADA.
31. Plaintiff was qualified to perform the essential functions of her position with reasonable accommodation.
32. Defendant failed to engage in the interactive process in good faith.
33. Defendant failed to provide reasonable accommodation.
34. Defendant violated the ADA.

## COUNT II – DISABILITY DISCRIMINATION (ADA)

35. Plaintiff incorporates paragraphs 1–28.
36. Defendant terminated Plaintiff while she remained under medical restrictions.
37. Plaintiff's disability was a motivating factor in Defendant's decision.
38. Defendant violated the ADA.

## COUNT III – RETALIATION (ADA)

39. Plaintiff incorporates paragraphs 1–28.
40. Plaintiff engaged in protected activity by requesting accommodation.
41. Defendant terminated Plaintiff thereafter.
42. There is a causal connection between Plaintiff's protected activity and termination.
43. Defendant violated the ADA.

# VI. DAMAGES

Plaintiff seeks:

- Back pay
- Front pay
- Compensatory damages
- Punitive damages
- Pre-judgment interest
- Costs
- Trial by jury

# VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*[signature]*

Ann McKenzie

149 Kingstons Cove

Clarksville, TN 37042

931-220-4516

abevels@gmail.com

Plaintiff, Pro Se



Vanderbilt VUAH Float Pool
Nashville, TN 37232

8.13.24

Ann McKenzie
149 Kingston Cv.
Clarksville, TN 37042

Dear Ann,

We have made attempts to contact you on 07.15.24, 07.26.24, and 08.7.24, 08.13.24 and 8.14.24 regarding your return-to-work plan. Since that time, you have been approved for a temporary work accommodation. You were placed on leave 11.23.2022.

Please be advised that you are being placed on the schedule to work in the assignment available based on the work restrictions that you have requested. Please return to work or contact your manager Valencia McGee today to discuss your work assignment and next steps to remain in good standing due to the certification/licensure requirements and return to work program.

Please be advised that failure to return to work plan may prevent you from participating in the return-to-work program and may impact your employment. Please contact your Return-to-Work Representative OR your leader by August 26, 2024. Failure to contact us may be considered unprotected leave of absence and may result in an end of employment.

In the event that you resign, your employment will be in good standing, and you will be eligible for rehire and welcome to apply for open positions with VUMC, for which you are qualified, if you are able to resume working.

If you have any questions regarding the contents of this letter, please contact me at **615-343-9906**

Sincerely,

Valencia McGee RN, MSN
VUMC Float Pool Manager

Cc: HR Business partner

1313 21st Avenue South
Suite 109 Oxford House
Nashville, TN 37232
tel 615-936-0288
VanderbiltHealth.com

# VANDERBILT ♦ UNIVERSITY
## MEDICAL CENTER

May 5, 2025

**VIA EEOC PORTAL**

Mr. Juan Ibarra
Equal Employment Opportunity Commission
220 Athens Way, Suite 350
Nashville, Tennessee 37228-1327

Re: ***Ann McKenzie v. Vanderbilt University Medical Center***, EEOC Charge No. 494-2025-01761

Dear Mr. Ibarra:

I am submitting this position statement[1] on behalf of Vanderbilt University Medical Center (VUMC") in response to a charge of discrimination and retaliation brought by a former employee, Ann McKenzie. In her charge, Ms. McKenzie alleges that VUMC terminated her employment as a registered nurse and retaliated against her due to a claimed disability in violation of the Americans with Disabilities Act (ADA). Because Ms. McKenzie offers only general, conclusory statements in support of her allegations that are devoid of supporting facts, VUMC is hampered in its ability to fully respond to her charge and, accordingly, reserves the right to amend or supplement this position statement should additional information be provided by her. Because Ms. McKenzie's claims are supported by neither the facts nor the law, VUMC respectfully requests that her charge be dismissed in its entirety.

**Statement of Facts**

VUMC is a nonprofit academic healthcare institution that employs over twenty-five thousand employees and adheres to the principles of equal opportunity, as reflected in its various policies and procedures prohibiting discrimination, harassment, and retaliation.[2] Ms. McKenzie began her employment as a registered nurse in Vanderbilt University Hospital's float pool department on August 28, 2017. As a float nurse, Ms. McKenzie was responsible for analyzing, evaluating, and implementing patient care at the hospital. Because Ms. McKenzie injured herself at work, straining her neck, back, shoulders, and arms while assisting patients, she was placed on workers' compensation leave and began receiving workers' compensation benefits commencing on or about November 16, 2022. She also was approved for twelve

---

[1] As explained more fully within this position statement, VUMC denies that it discriminated or retaliated against Ms. McKenzie and denies every allegation contained in her charge that is not specifically admitted in this position statement. VUMC specifically denies without limitation that Ms. McKenzie was ever bullied, harassed, intimated, or retaliated against. Any information or documentation provided by VUMC in response to this charge is deemed strictly confidential, is not to be disseminated to anyone without VUMC's express prior written consent, and is not to be used for any purpose other than the review and resolution of the allegations contained within the charge. This response is not to be construed as an admission of any facts or a binding statement of VUMC's legal position and is not to be used as evidence of any kind in any administrative or judicial proceeding in conjunction with Ms. McKenzie's allegations. VUMC requests that all communications relating to this charge, including all requests to interview any VUMC representatives, be directed to the undersigned, Virginia Kelley, Paralegal, Vanderbilt University Medical Center, 3322 West End Avenue, Suite 1100, Nashville, Tennessee 37203, (615) 936-0101, virginia.kelley@vumc.org.

[2] These policies are accessible on-line.

VUMC was not required under the ADA to continue to employ Ms. McKenzie when she was refusing to engage in the interactive process and had already been off work for twenty-two months with no indication that she intended to return to work any time in the immediate future. Because VUMC would have continued to employ Ms. McKenzie if she had simply returned to work and accepted the position and training intended to accommodate her one work restriction, she cannot show as required that her employment would not have ended but for her claimed disability. Because her employment ended for the legitimate and non-discriminatory reason that she chose not to report back to work after being cleared or seek further accommodation, Ms. McKenzie cannot state a viable claim of discrimination under the ADA.

Her claim of retaliation is equally unavailing. To state a claim of retaliation under the ADA, Ms. McKenzie must show "(1) she engaged in protected activity under the ADA, (2) VUMC was aware of that activity, (3) she suffered an adverse employment action, and (4) a "causal connection" existed between the protected activity and the adverse action. In her charge, Ms. McKenzie makes no reference to or any attempt to identify the protected activity in which she claims she has engaged. Protected activity is defined under the ADA as opposition to unlawful employment discrimination or participation in investigations or proceedings involving unlawful discrimination. While a request for accommodation under the ADA can constitute protected activity, Ms. McKenzie did not specifically request any accommodation for her claimed disability under the ADA and, in fact, refused to engage in the interactive process with her managers when they sought to discuss a return-to-work and accommodation plan with her. As the courts have recognized, an employee seeking an accommodation must make clear that she wants assistance for her disability. Although Ms. McKenzie requested a leave of absence under the FMLA approximately twenty-one months prior to her termination, some courts have maintained that a request for FMLA leave does not qualify as protected activity under the ADA.

Even if her leave of absence could be construed as protected activity, she cannot show the requisite causal connection between the protected activity and the adverse action. To show causation, Ms. McKenzie must produce sufficient evidence from which an inference can be drawn that the adverse action would not have occurred in the absence of the protected conduct. As discussed above, VUMC was prepared to continue Ms. McKenzie's employment in an accommodated position, but Ms. McKenzie refused to return to work or even discuss the return-to-work plan with her managers. This refusal formed the basis for ending her employment and broke any chain of causation needed for a retaliation claim.

**Conclusion**

Because Ms. McKenzie chose not to return to work following a twenty-two-month absence, even though her healthcare provider stated that she could return to work with a restriction that VUMC was willing to accommodate, she cannot state a viable claim of either discrimination or retaliation. VUMC therefore respectfully requests that her charge be dismissed in its entirety. Please do not hesitate to contact me should you require anything further from VUMC in conjunction with your investigation of this charge.

Sincerely,

*Virginia Kelley*

Virginia Kelley
Paralegal

weeks of block Family and Medical Leave Act ("FMLA") leave from on or about December 14, 2022 through March 7, 2023 and for an additional fourteen weeks of continuous non-FMLA leave thereafter.

After Ms. McKenzie had been off work for more than nineteen months, she was contacted in July 2024 regarding her health status and her ability to return to work. On July 18, 2024, Ms. McKenzie's healthcare provider informed VUMC that Ms. McKenzie could return to work provided that she did not use her left shoulder above her chest level. After confirming that this was Ms. McKenzie's only work restriction, Teresa Overton, VUMC's Director of Risk and Insurance Management, collaborated with the administration of Ms. Mc Kenzie's unit (Valencia Mcgee, Manager of Patient Care, and Christina Rozsavolgyi, Assistant Manager), to identify a temporary position into which Ms. McKenzie could be placed that would accommodate that restriction. Based on this collaboration, VUMC was prepared to temporarily assign Ms. McKenzie to a monitor tech position, that would not require her to use her left arm, and to offer her virtual nurse training commencing on July 18, 2024. After she failed to answer any of the repeated attempts to contact her regarding this accommodation and return-to-work plan, Ms. McGee sent Ms. McKenzie a letter on August 13, 2024 advising her of those repeated attempts and her need to contact management by no later than August 26, 2024. Ms. McKenzie was informed in the letter that her leave of absence could be deemed unprotected if she failed to contact management by that date. Under VUMC's return-to-work policy, Ms. McKenzie was expected to either accept the temporary position offered to her or, alternatively, apply again for FMLA leave, if available, or otherwise request a non-FMLA medical leave of absence. Notwithstanding this expectation, Ms. McKenzie neither returned to work nor applied for or requested a leave of absence. Given that, Ms. McGee informed Ms. McKenzie by telephone on September 17, 2024 that her employment had been terminated. In a follow-up letter, Ms. McGee noted that Ms. McKenzie had been off work for nearly two years and that her extended absence from work did not qualify as protected leave under VUMC's policies. [3]

**Analysis**

To state a claim for disability discrimination, Ms. McKenzie must first be able to show that she was a disabled individual who was otherwise qualified to perform the essential functions of her position, with or without reasonable accommodation, at the time of her termination. To be considered disabled, Ms. McKenzie must show that she had a physical or mental impairment that substantially limited one or more of her major life activities. Ms. McKenzie's conclusory statements in her charge fail to offer any explanation of the nature of her alleged impairment or any explanation of its impact on her major life activities. Any determination as to whether an impairment substantially limits a major life activity requires an individualized assessment. At the time of her termination, Ms. McKenzie's healthcare provider expressed that her impairment only limited her ability to use her left shoulder above her chest level. Courts, when confronted with a similar set of facts, have concluded that such a limitation does not necessarily substantially limit a major life activity and have found that an individual with a shoulder impairment is not necessarily disabled.

Even if Ms. McKenzie was able to show that she was disabled within the meaning of the ADA, she cannot show that she was otherwise qualified at the time of her termination. Although her healthcare provider cleared Ms. McKenzie to return to work with only one restriction, which VUMC was willing to accommodate, Ms. McKenzie refused to return to work or even respond to her managers' communications. Employees, like Ms. McKenzie, who are either unable or unwilling to return to work on a regular basis are unable to satisfy any of the functions of the position, much less the essential ones, and therefore are deemed to be unqualified.

---

[3] Copies of these communications, and the return-to-work policy, are shared in Exhibit A.



*Assigned Attorney(s)*
LUCY FITZHUGH
lucy.fitzhugh@punchworklaw.com

punchworklaw.com
1 Riverfront Pl., Ste 745
North Little Rock, AR 72114
Phone: 501-242-4299

July 11, 2025            **VIA: Labor Punchwork Portal**

Bradley Marbach, Investigator
EEOC
Nashville Area Office
220 Athens Way, Suite 350
Nashville, TN 37228

    Re:     **Ann M. McKenzie v. Vanderbilt University Medical Center**
             **EEOC Charge No. 494-2025-01941**
             **Response to Position Statement**

Dear Investigator Marbach:

Thank you for the opportunity to respond to the position statement of Vanderbilt University Medical Center ("VUMC" or "Respondent") on this charge. Ms. McKenzie reiterates the initial statements in her charge that she was discriminated against as a result of disability discrimination.

Ms. McKenzie does not consent to, and reserves the right to object to, the introduction of this Response to Position Statement at any legal, administrative, or other proceeding. This response is not an affidavit. Our investigation is ongoing. While we believe this response to be complete and correct in all respects, we reserve the right to supplement or correct information as additional facts become available.

    a. **Facts:**

On August 28, 2017, Ms. McKenzie was employed as an RN with Vanderbilt University Medical Center in the float pool department. Due to the severity of a work related injury and complications that arose since the initial surgery, Ms. McKenzie now has a work related medical impairment that substantially limits one or more major life activities and therefore qualifies as a disability under the Americans with Disabilities Act of 1990, as amended. ***See Exhibit A - Medical documentation.*** Ms. McKenzie has been discriminated against because of her disability.

Ms. Kenzie was also retaliated against by being harassed, bullied, and intimidated because of her disability. VUMC failed to provide Ms. McKenzie with accommodations as it was unwilling to engage in the accommodation process regarding Ms. McKenzie's latest accommodation request.

On November 11, 2022, Ms. McKenzie suffered a work-related injury. On June 19, 2023, Ms. McKenzie underwent surgery on her left shoulder and began physical therapy the following month. Despite Ms. McKenzie's efforts to recover, complications led to a second surgery in February 2024. During this time, Ms. McKenzie developed new symptoms — including persistent neck swelling — which required evaluation by multiple specialists. After ongoing medical assessments, a third shoulder surgery and a neurosurgical consultation were recommended, authorized and added to Ms. McKenzie's workers' compensation treatment plan. Ms. McKenzie was compliant, responsive, and followed every step of the medical process. Ms. McKenzie has repeatedly been in contact with her supervisor, Valencia McGee (Valencia), Manager of Patient Care, throughout the entirety of this process, asking what she needed to do to ensure that her job was not in jeopardy. Valencia persistently alleged that she did not know anything about Ms. McKenzie's injury, the FMLA process, or the workers' compensation process, and that Ms. McKenzie needed to contact the claims adjuster.

After the second surgery, Ms. McKenzie was told that the claims adjuster would call her with information about a temporary return to work plan. Ms. McKenzie contacted HR and also the Chief Nursing Officer (CNO) for help but she never received the help that she requested. Ms. McKenzie remained available for work as soon as medically advisable. During Ms. McKenzie's leave, she even tried to keep up her competencies, but the system would not allow Ms. McKenzie to test because she was listed as non-FMLA.

The injury that Ms. McKenzie sustained at work left her with a severe and debilitating injury, which is the reason for her current disability. Ms. McKenzie has been bullied, harassed, intimidated, and retaliated against during this entire process. After Ms. McKenzie raised concerns of not receiving her weekly checks, VUMC called the police falsely accusing Ms. McKenzie of being a threat to herself. VUMC knew that Ms. McKenzie had a past history of mental health treatment but had no active psychiatric restrictions and had been cleared to work. These were baseless accusations that deeply humiliated Ms. McKenzie. Ms. McKenzie was repeatedly asked if she needed to see a psychiatrist and her mental health history was used as a tool to discredit or intimidate her. This significantly contributed to Ms. McKenzie's emotional distress and wellbeing.

Ms. McKenzie was discriminated against and was wrongfully terminated on September 19, 2024, due to her disability. The reason alleged for Ms. McKenzie's termination was that she allegedly violated the VUMC Non-FMLA and Personal Leave of Absence Policy, of which Ms. McKenzie had never been told about. If this were true, then why had they kept Ms. McKenzie under their employ for 22 months? When Ms. McKenzie tried to return to work, VUMC was not willing to further engage in the reasonable accommodation process, and further failed to provide Ms. McKenzie with the information necessary to request accommodations and/or FMLA leave.

The reasons for Ms. McKenzie's termination were pretextual. The real reason for Ms. McKenzie's termination was because of discrimination due to her disability. Ms. McKenzie was retaliated against by being harassed, bullied, and intimidated. On September 19, 2024, an adverse employment action occurred when Ms. McKenzie was wrongfully terminated. VUMC's actions are in violation of the Americans with Disabilities Act of 1990, as amended.

    b. **Inaccuracies/Misstatements/Arguments:**

VUMC falsely claims that Ms. McKenzie was cleared to return to work on July 18, 2024, after clarification from her treating physician, which is totally inaccurate. On July 16, 2024, Teresa Overton (Teresa), the workers' compensation adjuster, contacted Ms. McKenzie's physician's office to request that her driving restriction be lifted. At that time, Ms. McKenzie's physician was on vacation, and the office staff merely said they would "note" the request. No official clearance was provided. After that, Ms. McKenzie did receive a call from Valencia to

discuss return to work plans. During the call, Ms. McKenzie expressed concern that pursuing further treatment — including the third surgery — might lead to termination. Ms. McKenzie feared that continuing to advocate for her medical needs might be seen as burdensome or excessive, and that her job was in jeopardy.

On July 22, 2024, out of concern that she might be terminated in retaliation, Ms. McKenzie went to Occupational Health to get medically cleared to return to work, proving she was willing and able to return with certain restrictions/accommodations, but with the understanding she was still planning to see her treating physician on August 15, 2024. *See Exhibit B - Telehealth visit*. It wasn't until August 15, 2024, when Ms. McKenzie had her in-person visit with her physician where he formally reviewed her condition and officially lifted the driving restriction. Ms. McKenzie's physician never fully cleared her to return to work without restriction. Ms. McKenzie still had a restriction of not using her left shoulder above chest level. Ms. McKenzie's physician was waiting on authorization to perform the third surgery that Ms. McKenzie needed in order to try to fully recover from her job related disability. Until that point, Ms. McKenzie had not been cleared to drive or return to work. Any claim to the contrary is premature and misleading. *See Exhibit C - 1.3.23 – 8.15.24 work restrictions and work clearances*.

Following Ms. McKenzie's August 15, 2024-appointment with her physician, Ms. McKenzie was told by Teresa that Valencia would be contacting her with return-to-work instructions. However, Ms. McKenzie was never provided with any details — no job description, no expected start date, no formal written plan, and no schedule – so she was unable to determine if her accommodation request had been met. VUMC did not want Ms. McKenzie to know the job that they were willing to place her in so that a determination could be made as to whether the job would fall under her job restrictions. None of that information was relayed to Ms. McKenzie. Ms. McKenzie was simply told to wait for a phone call, which never came. Then VUMC knowingly placed Ms. McKenzie on the work schedule, without informing Ms. McKenzie when or where to report. It is hard to have a return-to-work plan when your management is unwilling to communicate the return-to-work plan to you.

On August 23, 2024, when Ms. McKenzie called Valencia to confirm receipt of her August 13, 2024 letter, but Valencia was unavailable. Teresa told Ms. McKenzie to disregard the letter and informed her that the third surgery and neurosurgical consult had been authorized. Teresa repeated that Valencia would follow up with the next steps. Ms. McKenzie did receive a call from Valencia.

The timing of this shift in communication — directly *after* Ms. McKenzie expressed fear of retaliation — strongly suggests that Ms. McKenzie's anticipated need for further treatment became a factor in VUMC's need to sever direct communication and later terminate her. This underscores the connection between Ms. McKenzie's disability, her protected activity (medical leave and accommodation request), and the adverse employment action that followed.

On September 19, 2024, VUMC sent a letter to Ms. McKenzie stating that she had been terminated. It was then that Ms. McKenzie learned that she had previously been placed back on the work schedule, *without* notification, and terminated for allegedly not showing up for the shifts that she had been assigned to work. No new right to work plan was provided, no schedule, no reference to Ms. McKenzie's updated medical status was made, and no accommodation discussion was held.

   c. **Witnesses:**

Ms. McKenzie has provided the below list of employees who can provide additional information to support her claim.
   1. Phillip McKenzie, husband, 931-220-4516

Ms. McKenzie meets the prima facie burdens for disability discrimination because she has a medical impairment that substantially limits one or more major life activities and qualifies as a disability under the ADA, therefore

placing her within a protected class. Ms. McKenzie met all job qualifications and her job performance had never been an issue. Ms. McKenzie was able to perform the essential functions of her job duties, with approved reasonable accommodation. VUMC was unwilling to further engage in the reasonable accommodation process by being unwilling to communicate to Ms. McKenzie what the return to work plan was going to be, the job she was going to be placed in, the requirements of the job she was going to be placed in, and the days, times, and places she was to report for work. Further, Ms. McKenzie was never notified by anyone at VUMC that she was violating the VUMC Non-FMLA and Personal Leave of Absence Policy, which Ms. McKenzie had never seen before. On September 19, 2024, an adverse employment action occurred when Ms. McKenzie was terminated from her employment.

Ms. McKenzie deserves to have her federal rights protected, which would include a chance to recoup all the damages she suffered during her employment as a result of Respondent's intentional violations of the Americans with Disabilities Act of 1990, as amended. I am requesting the EEOC continue investigating this charge to allow Ms. McKenzie an opportunity to recover the damages she suffered as a result of Respondent's discriminatory practices.

Thank you for your review of the information and documents contained here.

Respectfully,

/s/ Lucy Fitzhugh
Lucy Fitzhugh

cc: Ann M. McKenzie

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br>_X_ EEOC | |

_____ and EEOC
*State or local Agency, if any*

| Name (*indicate Mr. Ms. Mrs.*) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ann Marie McKenzie | (931) 220-4516 | |

| Street Address | City, State and ZIP Code | Email: |
|---|---|---|
| 149 Kingstons Cove | Clarksville, TN 37042 | abevels@gmail.com |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Vanderbilt University Medical Center | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1211 Medical Center Drive | Nashville, TN 37232 | 615-322-2000 |

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

__ RACE __ COLOR __ SEX __ RELIGION __ NATIONAL ORIGIN

_X_ RETALIATION __ AGE _X_ DISABILITY _X_ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest     Latest
                09/19/2024

__ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

I was employed as an RN with Vanderbilt University Medical Center on August 1, 2017. I was injured on the job on November 11, 2022. Due to the severity of my injury and complications that arose since the initial surgery, I now have a work related injury that has turned into an impairment that qualifies as a disability under the ADA. I have repeatedly been in contact with my supervisor through the entirety of this process asking what I needed to do to ensure that my job was not in jeopardy and all she ever told me was, "I don't know anything about your injury and the process when you are on workers' compensation" and I needed to contact the workers' compensation adjuster. I contacted HR and also the Chief Nursing Officer (CNO) for help but no one ever told me that I had to reapply for FMLA leave approval every six months. On September 19, 2024, I was terminated from my employment with the issue being that I violated the six months leave of absence policy. The injury that I sustained at work left me with a severe and debilitating injury which is the reason for my current disability. I have been bullied, harassed, intimidated, and retaliated against during this entire process. Now I am being discriminated against and was wrongfully terminated due to my disability. During my leave I have even tried to keep up my competencies, but the system would not allow me to test because I am listed as non-FMLA.

The reasons for my termination were pretextual. The real reasons for my termination were because of the discrimination due to my disability. I have been retaliated against by being harassed, bullied, and intimidated. An adverse employment action occurred when I was wrongfully terminated on September 19, 2024. My employer's actions are in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>02/18/2025  *[signature]*<br>Ann Mckenzie (Feb 18, 2025 15:15 CST)<br>Date    *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLANANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

# EEOC Ann McKenzie Charge Form
Final Audit Report 2025-02-18

| | |
|---|---|
| Created: | 2025-02-18 |
| By: | Lucy Fitzhugh (lucy.fitzhugh@wh.law) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAKS4rLsW1VVF3AdjEiflza27C-5OD3dSf |

## "EEOC Ann McKenzie Charge Form" History

- Document created by Lucy Fitzhugh (lucy.fitzhugh@wh.law)
  2025-02-18 - 8:56:11 PM GMT

- Document emailed to Ann Mckenzie (abevels@gmail.com) for signature
  2025-02-18 - 8:56:15 PM GMT

- Email viewed by Ann Mckenzie (abevels@gmail.com)
  2025-02-18 - 9:02:32 PM GMT

- Document e-signed by Ann Mckenzie (abevels@gmail.com)
  Signature Date: 2025-02-18 - 9:15:12 PM GMT - Time Source: server

- Agreement completed.
  2025-02-18 - 9:15:12 PM GMT

 Adobe Acrobat Sign